Clinton C. HOWARD, Jr., and
Sherry Webster, Plaintiffs,

v.

Patrick W. KEOHANE, Warden,
Etc., et al., Defendants.

Civ. A. No. 94–391.

United States District Court,
E.D. Kentucky,
Lexington.

July 20, 1995.

Sherry Webster, Dublin, CA, pro se.

Clinton C. Howard, Jr., Lompoc, CA, pro se.

David L. Bunning, U.S. Attorney's Office, Lexington, KY, for defendants Margaret C. Hambrick, Warden Kathleen Hawk.

## OPINION AND ORDER

FORESTER, District Judge.

### I. INTRODUCTION

Plaintiff Clinton C. Howard, Jr., is an inmate at USP–Lompoc and Plaintiff Sherry Webster is presently an inmate at the Federal Correctional Institution at Dublin, California ("FCI–Dublin"); however, at the time this action was filed, Plaintiff Webster was an inmate at FMC–Lexington, prior to its conversion to an all-male facility.

Plaintiffs, allegedly former spouses in a common-law marriage, filed this action pursuant to 42 U.S.C. § 1983, claiming that the Defendants, Margaret C. Hambrick, in her official capacity as Warden at Federal Medical Center, Lexington, Kentucky ("FMC–Lexington"), and Kathleen Hawk, in her official capacity as Director as Bureau of Prisons ("BOP"), had violated their First Amendment rights by denying their request to correspond with each other. Plaintiffs do not seek monetary damages; they seek only to enjoin the Defendants from preventing them from communicating with each other.

This matter is before the Court on the following motions:

1. Plaintiffs' motion for leave to proceed *in forma pauperis* and for a temporary restraining order and/or injunctive relief against the Defendants during the pendency of this action. No response was filed to this motion, and the time for responding has expired.

2. Defendants' motion for summary judgment and the motion of the Plaintiffs, *pro se,* for summary judgment. These motions have been fully briefed and are ripe for consideration.

3. Plaintiffs' motion to stay this action while they initiate litigation against the United States Probation Office in the United States District Court for the Eastern District of Louisiana. No response was filed to this motion, and the time for responding has expired.

## II. THE PENDING MOTIONS

### A. Plaintiffs' motion for leave to proceed *in forma pauperis* and for a temporary restraining order and/or injunctive relief

The record reflects that this action was originally filed in the United States District Court for the Central District of California, Los Angeles Division. On September 7, 1994, United States Magistrate Judge Carolyn Turchin granted Plaintiffs leave to proceed *in forma pauperis* herein. Thereafter, on September 20, 1994, United States District Judge David V. Kenyon concluded that since Plaintiffs' complaint concerned the decision of Margaret Hambrick, Warden at FMC–Lexington, to deny their request to correspond with each other, in the interests of justice, this action should be transferred to the Eastern District of Kentucky, pursuant to 28 U.S.C. § 1406(a), and this action was so transferred.

Subsequently, Magistrate Judge James B. Todd reviewed this action and by Order entered on October 24, 1994, directed the Clerk of the Court to issue summons to Margaret C. Hambrick, in her official capacity as Warden at FMC–Lexington, and Kathleen Hawk, in her official capacity as Director of the BOP. This Order recognized that Plaintiffs were proceeding *in forma pauperis;* however, since Plaintiffs' applications for leave to proceed *in forma pauperis* had previously been granted by Magistrate Judge Carolyn Turchin on September 7, 1994, prior to this action being transferred from the Central District of California, there was no need for Magistrate Judge Todd to consider or to rule on Plaintiffs' applications for leave to proceed *in forma pauperis.*

For reasons unknown to the Court, on November 14, 1994, Plaintiffs again moved for leave to proceed *in forma pauperis.* This request is moot.

In this same motion, Plaintiffs also moved for a temporary restraining order and/or injunctive relief against the Defendants, requesting that they be permitted to correspond with each other while this action is pending. As grounds for this motion, Plaintiffs rely on BOP Program Statement 5265.08, codified as 28 C.F.R. § 540.17, which provides:

**Correspondence between confined inmates.**

An inmate may be permitted to correspond with an inmate confined in any other penal or correctional institution, providing the other inmate is either a member of the immediate family, or *is a party or a witness in a legal action in which both inmates are involved.* (emphasis supplied).

### Analysis

■ Other than the above-referenced BOP Program Statement, Plaintiffs' motion for a temporary restraining order and/or injunctive relief is unsupported by any authority, and the Court is unaware of any authority to support their request. Plaintiffs argue that because they are both parties in this action against the BOP, they are entitled to temporary injunctive relief while this action is pending, since BOP Program Statement 5265.08 permits inmates involved in a legal action to correspond with each other. The Court is unpersuaded by Plaintiffs' novel argument. If Plaintiffs' premise were correct, inmates housed in different institutions would be encouraged to file lawsuits against the BOP so that they would be permitted to correspond with one another when they otherwise would not be authorized to communicate. The Court does not discern such intent from BOP Program Statement 5265.08. Plaintiffs' theory circumvents the policy underlying BOP Program Statement 5265.08. Although creative, Plaintiffs' reliance on BOP Program Statement 5265.08 in support of their argument is misplaced. Plaintiffs' motion for interim injunctive relief will be denied.

### B. The cross-motions for summary judgment

The record reflects that this action concerns no factual disputes; therefore, this action may be subject to resolution by summary judgment, pursuant to Fed.R.Civ.P. 56.

### Analysis

Prior to their respective convictions on the federal charges, both Plaintiffs were citizens of Louisiana. The presentence investigation report ("PSR") of Plaintiff Webster states that she "has lived for all of her life in the greater New Orleans area." PSR, p. 5, ¶ 32. The PSR of Plaintiff Howard states that he "has predominately lived in the greater New Orleans area since birth. He was living in San Francisco, California for a brief period before his arrest on a warrant for the instant offense." PSR, p. 10, ¶ 45.

The Plaintiffs' marital history, as memorialized in their respective PSRs, indicates the following:

1. Plaintiff Webster, age 43, had a long relationship with a Nathan Webster that produced five (5) children, the eldest of which was 25 years of age in 1992, when the PSR was prepared. Plaintiff Webster and Nathan Webster were married from 1969 to 1971. Subsequently, Plaintiff Webster was married to a John Jones in 1989, but this marriage ended in 1990. There is no mention in Plaintiff Webster's PSR about any non-marital relationship with Plaintiff Howard. PSR, p. 6, ¶¶ 34, 35.

2. Plaintiff Howard, age 42, has never been married; however, he is the father of one son, Gertie Hampton, born July 12, 1973, born from his non-marital relationship with Gertie Hampton. At the time his PSR was prepared in 1992, he had a non-marital relationship with a Marguerite Santinac. There is no mention in Plaintiff Howard's PSR about any non-marital relationship with Plaintiff Webster. PSR, p. 10, ¶ 48.

In support of their motion for summary judgment, Plaintiffs contend that they began a relationship in Louisiana in 1979 which should be considered a common-law marriage, that this common-law marriage was subsequently dissolved, but that on March 12, 1991, they reconciled, and from that date until the date of Plaintiff Howard's arrest on May 22, 1991, they lived in a common-law marriage in Louisiana. Plaintiffs argue that

since they are common-law spouses, they are members of each other's immediate family, as defined by BOP Program Statement 5265.08; therefore, they are entitled to correspond with each other, and the BOP's decision to deny them that right violates the First Amendment.

In support of their motion for summary judgment, the Defendants rely on BOP Program Statement 5265.08, which clarifies the scope of members of an inmate's immediate family for purposes of 28 C.F.R. § 540.17. Immediate family is defined as the "inmate's spouse, mother, father, children, and siblings." (BOP Program Statement 5265.08, 10/1/85, p. 9). Elaborating on the term "spouse," this program statement further provides:

> The word "spouse" includes a common-law relationship which has previously been established in a state which recognizes this status. In states that do not, common-law relationship is not considered "immediate family". For determination of applicable state laws, Regional Counsel is to be consulted.

*Id.*

The Defendants contend that since the state of Louisiana does not recognize common-law marriages, pursuant to BOP Program Statement 5265.08, Plaintiffs are not to be considered spouses or members of each other's immediate family; thus, the Defendants argue that they have no right to correspond with each other.

### Analysis

■ It is well settled that the state of Louisiana does not recognize common-law marriages formed in Louisiana. *Liberty Mutual Insurance Company v. Caesar,* La.App., 345 So.2d 64 (1977). BOP Program Statement 5265.08 provides that if an inmate's state of residence does not recognize common-law marriages, then the inmate's common-law marriage will likewise not be recognized by the BOP; therefore, such common-law spouse will not be considered a member of an inmate's immediate family for purposes of 28 C.F.R. § 540.17. Consequently, pursuant to BOP Program Statement 5265.08, the BOP correctly determined that Plaintiffs are not entitled to correspond with each other

because as a matter of Louisiana law, they are not spouses and hence, are not members of each other's immediate family.

■ The fact that Warden Keith Hall at FCI–Oakdale, Louisiana, had previously approved Plaintiffs' request to correspond with each other on the basis that they were common-law spouses and the fact that they corresponded while Plaintiff Howard was an inmate at FCI–Oakdale and Plaintiff Webster was an inmate at St. Tammany Parish Jail in Covington, Louisiana, is not binding on this Court. It is clear that Warden Hall's approval of such correspondence was in violation of BOP Program Statement 5265.08. Further, Warden Hall's decision to permit Plaintiffs to correspond was not binding on Warden Hambrick or any other BOP official.

Concerning the constitutionality of BOP Program Statement 5265.08, the constitutionality of a Missouri inmate correspondence regulation that is identical to the federal prison policy in question here was upheld in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Further, in *Farrell v. Peters,* 951 F.2d 862 (7th Cir.1992), the Seventh Circuit held that the First Amendment was not violated when an Illinois state prisoner was denied permission, pursuant to an Illinois Department of Corrections policy, to correspond with his alleged common-law wife, an Illinois state prisoner in another Illinois prison.

■ Thus, it is clear from the applicable case law that BOP Program Statement 5265.08 is constitutional and its application to the Plaintiffs does not violate their First Amendment rights.

■ In replying to the Defendants' response to Plaintiffs' motion for summary judgment, Plaintiffs argue that Louisiana does recognize common-law marriages, as evidenced by an *in forma pauperis* form affidavit/questionnaire utilized by a Louisiana state court. Item 5 of this form requires the affiant to indicate his or her marital status; one of the categories of marital status listed was "Living as 'Common Law'". (*Exhibit* to *Plaintiff's Objection to Defendant's Response*

*to Motion for Cross Summary Judgment—* DE # 11).

The form in question does not prove that Louisiana recognizes common-law marriages that are allegedly formed in Louisiana. While Louisiana does not recognize common-law marriages formed in Louisiana, Louisiana does recognize common-law marriages that are formed in states that do recognize such marriages. In other words, if a couple formed a common-law marriage in a state that recognized common-law marriages and then subsequently moved to Louisiana without dissolving their common-law marriage, then Louisiana would recognize the common-law marriage formed elsewhere. This rule is seen in *Brinson v. Brinson,* 233 La. 417, 96 So.2d 653 (1957). *See also, Peirce v. Peirce,* 379 Ill. 185, 39 N.E.2d 990 (1942). However, since Plaintiffs' alleged common-law marriage was formed in Louisiana, this rule is of no benefit to the Plaintiffs.

**C. The motion to stay**

Plaintiffs have also moved the Court to stay this action while they initiate litigation against the United States Probation Office in the United States District Court for the Eastern District of Louisiana. Plaintiffs state that they informed each of their respective probation officers of their common-law marriage and that their probation officers omitted to include this information in their PSRs.

### Analysis

Plaintiffs seem to be of the mistaken impression that if their PSRs reflected the fact that they were living in a common-law marriage, then the BOP would be required to permit them to correspond with each other. Plaintiffs' erroneous belief ignores the fact that Louisiana does not recognize a common-law marriage formed in Louisiana; therefore, the BOP likewise will not recognize such a common-law marriage, as previously detailed in BOP Program Statement 5265.08. Thus, even if the information concerning their alleged common-law marriage were contained in Plaintiffs' PSRs, Plaintiffs would nevertheless not be permitted to correspond with each other. Consequently, Plaintiffs' motion to stay is without merit.

## III. CONCLUSION

For all of the reasons previously stated, based on the applicable case law, the court concludes (1) that the Plaintiffs are not entitled to interim injunctive relief while this action is pending, (2) that the Defendants are entitled to summary judgment, and (3) that this action should not be stayed while Plaintiffs initiate litigate litigation against the United States Probation Office in the United States District Court for the Eastern District of Louisiana.

Accordingly, **IT IS HEREBY ORDERED** and **ADJUDGED** that:

1. The Order of reference of this action to United States Magistrate Judge James B. Todd is **WITHDRAWN.**

2. Plaintiffs' motion for leave to proceed *in forma pauperis* [DE # 7] is **MOOT.**

3. Plaintiffs' motion for a temporary restraining order and/or injunctive relief during the pendency of this action [DE # 7] is **DENIED.**

4. Plaintiffs' motion for summary judgment [DE # 9] is **DENIED.**

5. Plaintiffs' motion to stay this action while they initiate litigate litigation against the United States Probation Office in the United States District Court for the Eastern District of Louisiana [DE # 14] is **DENIED.**

6. Defendants' motion for summary judgment [DE # 8] is **GRANTED.**

7. Plaintiffs' claims for injunctive relief against Defendants, Margaret C. Hambrick, in her official capacity as Warden at Federal Medical Center, Lexington, Kentucky, and Kathleen Hawk, in her official capacity as Director as Bureau of Prisons, are **DENIED.** As a matter of law, Plaintiffs are not spouses and have no First Amendment right to correspond with each other under BOP Program Statement 5265.08.

8. All issues having been resolved, this action is **DISMISSED** and **STRICKEN** from the docket.